# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIBERTY INSURANCE CORPORATION, | ) )  ) |
| Plaintiff, | ) ) 2:16-cv-38 |
| v. | ) ) ) |
| ERICA HIGGINBOTHAM, D. C. and P. T., *as parents and natural guardians of S.C. and E.C.*, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is a MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(7) (ECF No. 6) filed by Defendant Erica Higginbotham along with a brief in support (ECF No. 7). Plaintiff Liberty Insurance Corporation ("Liberty) filed a response (ECF No. 10) and brief (ECF No. 11) in opposition, and Defendant filed a reply brief (ECF No. 13).[1] Accordingly, the motion is ripe for disposition.

### I. Background

### A. The Underlying Action

A civil action is now pending in the Court of Common Pleas of Allegheny County captioned *D.C. and P.T., as parents and natural guardians of S.C. and E.C. v. David Higginbotham, Erica Higginbotham, and Kathy Higginbotham*. It arose out of the sexual assault of S.C. and E.C. – two minor children – by David Higginbotham from 2008 through August 2013. The underlying suit alleges intentional tort claims (assault, battery, and intentional infliction of emotional distress) against David as well as a negligence claim against his wife Kathy and his daughter-in-law Erica, both of whom served as the children's occasional

---
1. Alongside her reply brief, Defendant also filed a MOTION FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS (ECF No. 12). The Court will grant the motion.

babysitter. At present, Liberty is providing a defense to Erica under two homeowners insurance policies that it issued to her, subject to a reservation of rights.

**B. The Declaratory Judgment Action(s)**

On January 8, 2016, Liberty commenced this case seeking a determination, under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 *et seq.*, that it does not have a duty to defend or indemnify Erica for the claim asserted against her in the Underlying Action. Liberty contends that the "Sexual Molestation Exclusion," "Business Exclusion," and "Home Day Care Exclusion" each preclude coverage. In its view, the underlying action "involves the operation of a 'business' in exchange for monetary or other compensation" – *i.e.*, babysitting – triggering the latter two exclusions. Compl. at 3.

More recently, on March 22, 2016, Erica commenced a "Complaint in Civil Action for Declaratory Judgment" against Liberty Insurance Corporation, D.C. and P.T., as parents and natural guardians of S.C. and E.C., Kathy Higginbotham, and David Higginbotham in the Court of Common Pleas of Allegheny County. That action seeks a determination that Liberty has a duty to defend the underlying action on behalf of Erica.

**II. Discussion**

Erica contends that this Court should decline to exercise jurisdiction over this declaratory judgment case. Liberty recognizes that the decision is discretionary, but argues that this Court should opt to issue a declaration of its rights and duties, as requested.

The DJA provides, in pertinent part, that "any court of the United States . . . *may* declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201 (emphasis added). The exercise of jurisdiction under the DJA is, therefore, entirely discretionary. *See Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 139 (3d Cir. 2014) (quoting *Wilton v. Seven Falls Co.*, 515

2

U.S. 277, 286 (1995)). "[D]istrict courts are authorized, 'in the sound exercise of [their] discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.'" *Id.* (quoting *Wilton*, 515 U.S. at 288). While the "exercise of discretion must be 'sound,'" the scope of the district court's discretion has been framed in "broad terms." *Id.* (citing *Wilton*, 515 U.S. at 287). "Rather than being subject to the 'normal principle that federal courts should adjudicate claims within their jurisdiction,' district courts exercising DJA discretion are governed by 'considerations of practicality and wise judicial administration.'" *Id.* (quoting *Wilton*, 515 U.S. at 288).

In *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942), the Supreme Court set forth several factors a district court should consider before entertaining a declaratory judgment action whenever there is "another proceeding . . . pending in a state court in which all the matters in controversy between the parties could be fully adjudicated." *Id.* at 495. "Ordinarily," the Supreme Court explained, "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* "Gratuitous interference with the orderly and comprehensive disposition of [ ] state court litigation should be avoided." *Id.* Thus, before exercising jurisdiction whenever there is a pending state-court proceeding involving the same matters, the district court must consider a non-exhaustive list of factors, such as the scope of the state court proceeding and "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Id.*

Fifty years later, in *Wilton*, the Supreme Court addressed "virtually identical" circumstances and reaffirmed "the *Brillhart* regime," again holding that district courts "have

3

substantial latitude in deciding whether to stay or to dismiss a declaratory judgment suit in light of pending state proceedings." *Wilton*, 515 U.S. at 286. The *Wilton* Court specifically narrowed its holding to situations in which there is a parallel state proceeding, however, noting that it was not attempting to "delineate the outer boundaries of that discretion in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings." *Id.* at 290.

Although the Court of Appeals for the Third Circuit has acknowledged that the DJA gives district courts broad discretion, it has also warned that the exercise of that discretion must be "reasoned." *Bituminous Coal Operators' Assoc. v. Int'l Union, United Mine Workers of Am.*, 585 F.2d 586, 596 (3d Cir. 1978). District courts must, therefore, address a multitude of factors when exercising their DJA discretion. *Id.* There are a number of general factors that must be considered, such as whether a declaration "will resolve the uncertainty of obligation which gave rise to the controversy; the convenience of the parties; the public interest in settlement of the uncertainty of obligation; and the availability and relative convenience of other remedies." *United States v. Pa., Dep't of Envtl. Res.*, 923 F.2d 1071, 1075 (3d Cir. 1991) (internal citations omitted). The Court of Appeals has also identified several additional factors that are relevant only in the insurance context:

> (1) A general policy of restraint when the same issues are pending in a state court;
>
> (2) An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion;
>
> (3) Avoidance of duplicative litigation."

*State Auto Ins. Co. v. Summy*, 234 F.3d 131, 134 (3d Cir. 2000) (quoting *Pa., Dep't of Envtl. Res.*, 923 F.2d at 1075).

In *Reifer*, the Court of Appeals for the Third Circuit held that the "the existence or non-existence of pending parallel state proceedings is but one factor for a district court to consider" in determining whether to exercise jurisdiction under the DJA. 751 F.3d at 144. The *Reifer* Court articulated a non-exhaustive list of eight (8) other factors that must be considered in exercising discretion as to whether or not to exercise jurisdiction under the DJA:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;
>
> (3) the public interest in settlement of the uncertainty of obligation;
>
> (4) the availability and relative convenience of other remedies;
>
> (5) a general policy of restraint when the same issues are pending in a state court;
>
> (6) avoidance of duplicative litigation;
>
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and
>
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Reifer*, 751 F.3d at 146.

Although the existence of parallel state proceedings is not dispositive, it is worthy of "increased emphasis." *Id.* (citations omitted). As the Court of Appeals explained:

> the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise. In this circumstance, as part of exercising sound and reasoned discretion, district courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors. This same rationale applies when state proceedings do exist. The existence of pending parallel state proceedings militates significantly in favor of declining jurisdiction, although it alone does not require doing so. In this circumstance, as part of exercising sound and reasoned discretion, district courts exercising jurisdiction should be rigorous in ensuring themselves that the existence of

pending parallel state proceedings is outweighed by opposing factors.

*Reifer*, 751 F.3d at 144-45.

The Court of Appeals made several additional observations in *Reifer* that are relevant in this case. In particular, the Court of Appeals noted that "[t]he insurance coverage context has been particularly fertile ground for exercising – and testing the boundaries of – DJA discretion, especially since [the] decision in *Summy*." *Id.* (citations omitted). Prior to *Reifer*, "the trend of many District Courts in Pennsylvania" was "to decline to exercise jurisdiction over declaratory judgment actions, involving an insurance company, that are solely brought on diversity, and have no federal question or interest." *Reifer v. Westport Ins. Corp.*, 943 F. Supp. 2d 506, 508 (M.D. Pa. 2013), *aff'd*, 751 F.3d 129 (internal citations omitted). This was true even in the absence of parallel state proceedings. *See, e.g.*, *id.*; *Phoenix Ins. Co. v. Kellner*, No. CIV. 11-1085, 2012 WL 266470, at *3 (W.D. Pa. Jan. 30, 2012). Support for this so-called "trend" was seemingly found in the frequently quoted line from *Summy* that "[t]he desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." 234 F.3d at 136. In *Reifer*, the Court of Appeals called this "trend" into question, finding it "problematic for two reasons." 751 F.3d at 147. "First," the Court of Appeals explained, "there is nothing to distinguish these cases from any other declaratory judgment action that invokes diversity jurisdiction and asks federal courts to declare the rights of parties under settled state law." *Id.* "Second, these cases implicate neither an improper use of procedure by insurance companies nor unfairness to insureds." *Id.* The Court of Appeals acknowledged the "district courts' apparent frustration over the volume" of declaratory judgment actions brought by insurance companies, but made clear that there is "'no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory

judgment action against an insured on an issue of coverage.'" *Id.* (quoting *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)). Thus, the Court of Appeals "reject[ed] any reading of *Summy* that supports per se automatic declining of jurisdiction in every" case involving an insurance coverage dispute arising under state law. *Id.* The Court of Appeals also cautioned that its remarks in *Summy* – "that such cases have 'no special call on the federal forum and that even less reason for federal jurisdiction exists when state law is 'firmly established'" – were dicta, inasmuch as "*Summy*'s holding specifically turned on considerations relevant to the pending state court suit." *Id.* at 147 (quoting *Summy*, 234 F.3d at 135-36). Rather than dismissing such actions by rote recitation of the *Summy* factors, the Court of Appeals emphasized that district courts must carefully analyze the factors set forth above – starting with the existence or non-existence of parallel state proceedings – before exercising or declining to exercise jurisdiction. *Id.*

The threshold question, then, is whether there is a pending parallel state proceeding, such that there is a presumption for or against the exercise of DJA discretion. The *Brillhart* Court described a pending "parallel" proceeding as one "presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495. The pending court proceeding must, in other words, permit "all the matters in controversy between the parties" to "be fully adjudicated." *Id.* Relevant here, "[i]t is irrelevant that the state declaratory judgment petition was filed after its counterpart in the District Court." 234 F.3d at 136. *Accord Ironshore Specialty Ins. Co. v. Haines & Kibblehouse, Inc.*, 3 F. Supp. 3d 303, 309-10 & n.23 (E.D. Pa. 2014) (citations omitted) (explaining that the sequence of filing of declaratory judgment actions is of no import). In other words, it does not matter that the Insurer won the race to this courthouse.

7

Against this backdrop, the Court concludes that the existence the March 22, 2016 "Complaint in Civil Action for Declaratory Judgment" triggers a presumption against exercise of Declaratory Judgment jurisdiction by this Court. The state court action presents the same coverage issues. It is between the same parties. And it is governed by state law.

The Court has also contemplated whether it would be a practical and wise use of judicial resources to hear the declaratory judgment action in this Court under the particular facts and circumstances of this case. The relevant factors weigh in favor of declining jurisdiction. Of considerable weight is the duty to avoid duplicative litigation and the inherent conflict of interest between Liberty's duty to defend and its right to assert policy exclusion. At the same time, the Court recognizes that a declaration in the federal lawsuit would certainly resolve the coverage issues raised by Liberty. But a parallel lawsuit is pending in state court which addresses the same issues, such that a general policy of restraint should apply. Ultimately, the Court concludes that, after weighing all the relevant factors, it will decline to exercise jurisdiction.

### III. Conclusion

For the reasons hereinabove stated, the Court will grant the motion to dismiss. An appropriate Order follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIBERTY INSURANCE CORPORATION, | )<br>)<br>) |
| Plaintiff, | ) 2:16-cv-38<br>) |
| v. | )<br>) |
| ERICA HIGGINBOTHAM, D. C. and P. T., *as parents and natural guardians of S.C. and E.C.*, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## ORDER OF COURT

AND NOW, this 24th day of March, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(7) (ECF No. 6) and the MOTION FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS (ECF No. 12) filed by Defendant Erica Higginbotham are **GRANTED**. The Clerk shall docket this case **CLOSED**.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc: Patricia A. Monahan
Email: Pamonahan@mdwcg.com
William C. Foster
Email: wcfoster@mdwcg.com

Daniel P. McDyer
Email: danmcdyer@ambylaw.com

(via CM/ECF)